[No. 46324.   En Banc.   June 26, 1980.]

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF WALLA WALLA, *Respondent,* v. HELEN M. EKANGER, *Petitioner.*

WILLIAM PRITCHARD, ET AL, *Respondents,* v. HELEN M. EKANGER, *Petitioner.*

*Critchlow, Williams, Ryals & Schuster* and *Richard M. Knoeber,* for petitioner.

*Stanley D. Taylor, Minnick, Hayner & Zagelow, P.S.,* and *H. H. Hayner,* for respondents.

UTTER, C.J.—Review was granted in this case to determine whether a defect in an affidavit in support of service

by publication is fatal to jurisdiction or may be cured by amendment. The Court of Appeals held that the affidavit could be cured, and affirmed the trial court's decree of foreclosure against petitioner Helen Ekanger. We affirm that holding.

Petitioner Ekanger owned a home in Kennewick subject to a mortgage in favor of First Federal Savings and Loan Association of Walla Walla (First Federal). Beginning in July 1975, Ekanger failed to make her mortgage payments. During the next several months, First Federal wrote Ekanger numerous letters and repeatedly attempted to reach her by telephone concerning her defaults. Finally, she was informed by letter dated September 22 that unless she had arranged to cure her default by September 30, a foreclosure action would be instituted. Because First Federal could not reach Ekanger by telephone, it also sent five telegrams warning her that a foreclosure action would be instituted unless she contacted its office immediately. Although Ekanger did contact First Federal on several occasions to make arrangements to reinstate the account, payment was never received. Finally, on October 9, First Federal informed Ekanger by letter that her file was being referred to counsel for the necessary legal action. First Federal filed foreclosure proceedings on November 6, 1975.

On November 28, the summons and complaint for foreclosure were delivered to the Benton County Sheriff for service on Ekanger. During the period of December 1 to 5, there were 14 unsuccessful attempts to serve Ekanger at her home. Although there was a car in the garage and dogs barking in the house on two occasions, no one would answer the door. The sheriff's office returned the papers unserved and a "not found" return was filed. Employees of First Federal's branch office made further attempts to serve Ekanger, but they were also unsuccessful.

Counsel for First Federal then decided to serve the summons by publication pursuant to RCW 4.28.100. Accordingly, on January 6, 1976, copies of the summons and

complaint were mailed to Ekanger at her home. In accordance with RCW 4.28.100, First Federal filed an affidavit in support of service by publication. The affidavit reported the attempts at personal service but did not state the nature of the underlying action and did not specifically state that copies of the summons and complaint had been mailed to Ekanger at her place of residence.

Ekanger did not appear in the foreclosure action and the home was sold to Mr. and Mrs. Pritchard at a sheriff's sale on May 21, 1976. The court confirmed the sale and directed disbursement of the proceeds. Pursuant to RCW 6.24.140, the court specified that at any time within the following 8 months, Ekanger could redeem her property by paying the amount of the bid plus interest, taxes, and liens. Ekanger did not attempt to redeem the property during this period.

On February 24, 1977, Ekanger moved to set aside the decree of foreclosure, alleging the court lacked jurisdiction to enter the decree because the affidavit of service by publication did not comply with the requirements of RCW 4.28.100. The statute provides that:

> When the defendant cannot be found within the state (of which the return of the sheriff of the county in which the action is brought, that the defendant cannot be found in the county, is prima facie evidence), and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons . . . and complaint in the post office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:
>
> . . .
>
> (6) When the action is to foreclose, satisfy, or redeem from a mortgage, or to enforce a lien of any kind on real estate in the county where the action is brought, or satisfy or redeem from the same;

RCW 4.28.100. Ekanger contended that the affidavit in support of service by publication in this case did not comply with these requirements because it did not state the nature of the cause of action and did not state that copies of the summons and complaint had been mailed to her.

On May 31, 1977, First Federal moved for leave to file an affidavit amending the original affidavit to reflect that the object of the action was to foreclose a mortgage and to indicate that copies of a summons and complaint were in fact mailed to Ekanger on January 6, 1976. The trial court accepted the amended affidavit, denied Ekanger's motion to vacate, and quieted title to the property in the Pritchards. The Court of Appeals in a nonunanimous opinion affirmed the trial court action and held that the technical defect in the affidavit of service by publication could be cured nunc pro tunc by the amended affidavit.

Petitioner Ekanger relies on *Lutkens v. Young,* 63 Wash. 452, 115 P. 1038 (1911), as support for her contention that the affidavit underlying service by publication must be in strict compliance with the statutory requirements and that a defect in the affidavit may not be amended nunc pro tunc. In *Lutkens,* we held that an affidavit underlying service by publication was fatally defective in failing to state that the affiant did not know the residence of the mortgagor.

The *Lutkens* decision predates by many years this court's complete revision of the state rules of civil procedure in 1967. As we observed in another post–1967 case turning on a procedural technicality, "the basic purpose of the new rules of civil procedure is to eliminate or at least to minimize technical miscarriages of justice inherent in archaic procedural concepts once characterized by Vanderbilt as 'the sporting theory of justice.'" *Curtis Lumber Co. v. Sortor,* 83 Wn.2d 764, 767, 522 P.2d 822 (1974). Thus, whenever possible, the rules of civil procedure should be applied in such a way that substance will prevail over form. *Cf. Curtis Lumber Co. v. Sortor, supra; cf. also Moore v.*

*Burdman,* 84 Wn.2d 408, 526 P.2d 893 (1974); *Malott v. Randall,* 83 Wn.2d 259, 517 P.2d 605 (1974).

■ The defect in First Federal's affidavit was one of form and not of substance. The summons and complaint were in fact mailed to Ekanger prior to the filing of the affidavit. The complaint disclosed that the action was one of foreclosure and, therefore, within the statute authorizing service by publication. Thus, First Federal actually complied with all elements of the statute, and the trial court acted within the proper limits of its discretion in allowing First Federal to amend its original affidavit to reflect what had in fact occurred.

Ekanger's rights were not materially prejudiced by the trial court's decision to allow First Federal to amend its affidavit. Ekanger in fact received exactly the same notice she would have received if the original affidavit had not been defective. She had actual knowledge of both the foreclosure and the sheriff's sale and chose to remain silent. Under these circumstances, the trial court properly allowed First Federal to amend its affidavit.

Insofar as the *Lutkens* decision and other decisions are inconsistent with this opinion, they are hereby overruled.

We affirm.

ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLI-VER, HICKS, and WILLIAMS, JJ., concur.

WRIGHT, J. (dissenting)—I dissent. As to the reasons why *the trial court never acquired jurisdiction,* I adopt in whole the excellent opinion of Judge Roe dissenting in the Court of Appeals. I shall, however, comment briefly on the nature of jurisdiction.

The Supreme Court of the United States has defined jurisdiction as the "power to decide the case either way, as the merits may require." *Erickson v. United States,* 264 U.S. 246, 249, 68 L. Ed. 661, 44 S. Ct. 310 (1924). This court has often given the same definition of jurisdiction. In *In re Estate of Brown,* 7 Wn.2d 717, 110 P.2d 867 (1941),

we said at page 723: "We have often stated that 'jurisdiction is the power to hear and determine.' *State ex rel. Meyer v. Clifford,* 78 Wash. 555, 139 Pac. 650."

Since jurisdiction is the power to hear and determine, it necessarily follows that the lack of jurisdiction means a lack of power to hear and determine. In *Wesley v. Schneckloth,* 55 Wn.2d 90, 346 P.2d 658 (1959), we said at pages 93–94: "Either it [a constitutional court] has or has not jurisdiction. If it does not have jurisdiction, any judgment entered is void *ab initio* and is, in legal effect, no judgment at all." The purported judgment was worth no more than if it had been signed by any citizen selected at random on the street.

The majority here has suggested, as did the majority in the Court of Appeals, that no right of the defendant has been violated. With that statement, I disagree. Defendant had a right to have her case heard and determined *only* by a court having jurisdiction. If defendant is to lose her home, it should *only* be as a result of a judgment of a court having jurisdiction. To take her home by virtue of a void judgment is a serious violation of her rights.

No useful purpose will be served by reiterating any of the discussion contained in the dissenting opinion in the Court of Appeals. For the reasons stated therein and herein, I would reverse the trial court and the Court of Appeals for want of jurisdiction.